Dargan, Ch.,
dissenting.
I do not concur with the majority of this Court in the decree which they hawe rendered. The testator, Powell McRa, having a lawful wife and grand children, but no lawful children, gives the whole of his estate, in trust, to pay his debts and two small annuities, and to support, maintain and educate his two natural children, Margaret S. and Duncan McRa ; and so soon as either of them becomes of age or marries, to convey to each of them one-half of his estate, real and personal, to them, their heirs and assigns forever. The will then provides, that if the foregoing clause of this will shall be declared null and void by any Court in this State, authorized so to decide, the testator gives to the said illegitimate children one-fourth part of the clear value of his estate, real and personal, after the payment of his debts, to them, their heirs and assigns forever. In this event, he also gives the remaining three-fourths of his estate to the complainant ; and after nominating the complainant as his executor, he concludes as follows: “ To his special kindness and attention, I commit my beloved daughter and son, and invoke for them his most kind attention and protection.”
Such is the will. In its construction, several questions have *108 arisen. I concur in the opinion .that grand children have no right to vacate the illegal provisions of a will in favor of illegiti-mates. ' If grand children were so entitled, by a parity of reasoning and the same wide construction, remote descendants would have the same right. Such an interpretation would comport neither with the language of the Act nor its objects.
I think, too, that the decision in Breithaupt v. Bauskett is correct, and that the right to vacate a deed or will, which is in violation of the provisions of the Act of 1795, is personal to the wife and lawful children ; such a disposition is valid against all the world but them ; and their right is so far personal, that it does not survive to the personal representatives of the wife and lawful children. But when it is asserted that the right is personal, in a sense that would forbid a lunatic wife or child from making the claim, or its being made in their behalf, I differ entirely. Such a conclusion is, in my judgment, a most unwarranted inference from the decisions ; which, when they declare that the right is personal, mean only that it is personal in the sense of the legal maxim, “actio personalis moritur cum persona.” This clearly is the doctrine, and none other. In the circuit decree it is decided that the lunatic wife of Powell McRa is civili-ter mortua ; and being civiliter mortua, she cannot exercise her personal discretion in asserting her claim, and that this Court cannot do it for her. I am not aware that a lunatic, in consequence of lunacy, loses any of his civil rights besides that of making contracts and testamentary dispositions of his property. The male lunatic cannot exercise any of his political rights and franchises. He has the same rights of person and of property as if he was sane. In the case of an election being necessary, this Court will exercise the right in his behalf. I will not discuss this subject further, but content myself with thus entering my protest against the doctrine of the decree on this point.
I concur in the opinion that, if the complainant takes the three-fourths of the estate given to him, he takes it discharged of any trust. If there were a direct and secret understanding between the testator and himself that he should hold for the *109 benefit of the illegitimates, on proof of that, the gift to him should be vacated on the application of the wife. But,, as regards Taylor, no such fraudulent intent or violation of the Act appears upon the face of the will. No trust is created nor legal or equitable obligation imposed. The moral obligation he might or might not fulfil, as his own sense of duty or honor should dictate.
Bat the difficulty with me lies in another view of the case. The lunacy not being an impediment, the widow of Powell McRa has a right, under the Act of 1795, to vacate the gifts to the illegitimate children, for the excess over one-fourth of the clear value of the estate. But, by the decree in this case, Taylor’s right, under the will, is superior to that of the wife; while confessedly, and by the decision in Owens vs. Owens, approved in this case, the right of the illegitimate children is superior to that of Taylor. The wife and lawful children are preferred to the illegitimates; the illegitimates are preferred to Taylor; and Taylor is preferred to the wife. Here is a circle. In this conflict of claims, why should the preference be given to the person claiming under the executory'devise ? He is not entitled until the wife comes into the Court and obtains a decree vacating the provisions of the will. The wife must have a decree before Taylor’s right arises. And in the self same decree in which her right is accorded to her, it is snatched away and given to another. ■ This is keeping the word of promise to the ear, and breaking it to the hope.
I protest against the decree, because it puts a construction upon the Act of 1795, by which the Act stands repealed, and is virtually expunged from the statute book. This, I am aware, is strong language, but is well warranted by an interpretation which enables any well advised or acute testator to defeat entirely the provisions of the Act. When this decree is reported, it will be a publication to the world of a form, under the sanction of this Court, by which rights of wives-and children, under the Act of 1795, may be completely frustrated. The sagacious and well informed will be thus enabled to evade the law, while *110 wills drawn by the ignorant, or without the advice of counsel, will still fall under its operation. Will any wife, or lawful child, hereafter, in the case of a will after this form, come into this Court to vacate its unlawful provisions in favor of the concubine and the illegitimates 1 Cui bono ? For what purpose should they come ? The only effect of their application, and a decree in their favor, is to give the property to a remainder-man, who may keep it himself, or bestow it where the law has not allowed the testator to bestow it. Strange, inconsistent, absurd doctrine!! that the only effect of a decree of the Court of Equity in favor of a person, is not to give that person the benefit of the decree, but instantly to take it away. But why should the wife and lawful children spend money and time in unnecessary litigation, and fruitlessly expose to the gaze and comment of the world their domestic sorrows and wrongs ? They come into Court with the Act of 1795 in their hands. They bring their claims within its provisions. The Court says, yes; you are entitled to vacate the illegal dispositions of the will, and here is a decree in your favor; and then, as it were in mockery, the Court says, this decree in your favor is but the condition|on which the property is to be taken from you.
We have a maxim in our law-books, as old as the common law itself, that it is the duty of Courts in their interpretation of statutes, so to construe them, as to advance the remedy and suppress the mischief. The decision, in this case, withholds the remedy, and provides a way in which the mischief may be perpetrated with impunity.
This Act of 1795, consisting, as it does, of but a few lines, has given rise to much difficult and embarrassing litigation. Questions have risen under it which no human sagacity could have foreseen. The Courts have often been called on for its construction. Decision after decision has been made, and interpretation piled upon interpretation, until the Act is covered all over by interpretations and judicial commentaries. One interpretation has been made the platform of another. Inferences are made from the language of the commentary, instead of the words of *111 the Act, the original complexion of which is lost sight of. We have gone on in this way, until we are involved by this case in a perfect labyrinth, which we may break through but cannot unravel. The Act, and all its tall superstructure of judicial construction and commentary, have now fallen down together; for the effect of the present decision is, in substance, to declare that there is a form by which its provisions may be defeated and set at naught.

Appeal dismissed.